No. 12-17712

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

IRWIN SCHIFF,

Defendant-Appellant
_____

Appeal from the United States District Court
for the District of Nevada
Honorable Kent J. Dawson, Presiding
_____

BRIEF FOR THE APPELLEE
_____

KATHRYN KENEALLY
*Assistant Attorney General*

FRANK P. CIHLAR          (202) 514-5396
  *Chief, Criminal Appeals &*
    *Tax Enforcement Policy Section*
GREGORY VICTOR DAVIS     (202) 514-5396
MARK S. DETERMAN         (202) 514-9245
  *Attorneys*
  *Department of Justice*
  *Post Office Box 502*
  *Washington, D.C. 20044*

*Of Counsel:*

DANIEL G. BOGDEN, ESQ.
  *United States Attorney*

- i -

## TABLE OF CONTENTS

Page

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i
Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii
Glossary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vii
Jurisdictional Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
Issue Presented . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
Bail Status . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
Summary of Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Argument:

Defendant Received Effective Assistance of Counsel
in the Direct Appeal of His Conviction . . . . . . . . . . . . . . . . . . . . . . . . 13

Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

1. Testimony of Psychological Expert . . . . . . . . . . . . . . . . . . . . . 15
2. Testimony of Five Witnesses . . . . . . . . . . . . . . . . . . . . . . . . . . 25
3. Legal Materials . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37
4. Book and Video . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52
Statement of Prior or Related Cases . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53
Certificate of Compliance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54
Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55
Certificate for Brief in Paper Format . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

- ii -

TABLE OF AUTHORITIES

Cases:                                                              Page(s)

*Banister v. U.S. Dept. of the Treasury,*
    2012 WL 5951426 (9th Cir.  November 23, 2012)  . . . . . . . . . . . . 25
*Cheek v. United States,*
    498 U.S. 192 (1991)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 25-26, 44
*Cooley v. United States,*
    501 F.2d 1249 (9th Cir. 1974)  . . . . . . . . . . . . . . . . . . 37, 40, 42-43
*Faretta v. California,*
    422 U.S. 806 (1975)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 19, 28
*Frazer v. United States,*
    18 F.3d 778 (9th Cir. 1994)  . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
*Gray v. Greer,*
    800 F.2d 644 (7th Cir. 1986)  . . . . . . . . . . . . . . . . . . . . . . . . . . 15
*Herzog v. United States,*
    226 F.2d 561 (9th Cir. 1955)  . . . . . . . . . . . . . . . . . . . . . . . . . . 49
*Indiana v. Edwards,*
    554 U.S. 164 (2008)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
*Kimmelman v. Morrison,*
    477 U.S. 365 (1986)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
*Luce v. United States,*
    469 U.S. 38 (1984)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
*Masson v. New Yorker Magazine, Inc.,*
    85 F.3d 1394 (9th Cir. 1996)  . . . . . . . . . . . . . . . . . . . . . . . . . . 49
*Merchant's Loan & Trust Co. v. Smietanka,*
    255 U.S. 509 (1921)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39
*Nationwide Transport Finance v. Cass Information Systems, Inc.,*
    523 F.3d 1051(9th Cir. 2008)  . . . . . . . . . . . . . . . . . . . . . . . . . . 34
*Old Chief v. United States,*
    519 U.S. 172 (1997)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
*Pollack v. Farmer's Loan & Trust Co.,*
    158 U.S. 601 (1895)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39
*Schiff v. United States,*
    131 S. Ct. 532 (2010)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
*Schulz v. IRS,*
    395 F.3d 463 (2d Cir.), *clarified on rehearing,*
    413 F.3d 297 (2005)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
*Smith v. Robbins,*
    528 U.S. 259 (2000)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
*Strickland v. Washington,*
    466 U.S. 668 (1984)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14-15

Cases (continued):                                                          Page(s)

*Swinton v. Potomac Corp.*,
     270 F.3d 794 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37
*Tennison v. Circus Circus Enterprises,*
     244 F.3d 683 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
*Tome v. United States,*
     513 U.S. 150 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47
*Transport Finance v. Cass Info. Sys., Inc.*,
     523 F.3d 1051 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
*United States v. Alvarez-Tautimez,*
     160 F.3d 573 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . 13, 18
*United States v. Barron,*
     575 F.2d 752 (9th Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
*United States v. Bergman,*
     813 F.2d 1027 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . 37, 40, 43-44
*United States v. Bernhardt,*
     642 F.2d 251 (8th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38
*United States v. Binder,*
     769 F.2d 595 (9th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
*United States v. Birtle,*
     792 F.2d 846 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
*United States v. Bishop,*
     291 F.3d 1100 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . 25-27, 47-48
*United States v. Bonneau,*
     970 F.2d 929 (1st Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . 26, 38
*United States v. Bostian,*
     59 F.3d 474 (4th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
*United States v. Byers,*
     730 F.2d 568 (9th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
*United States v. Carter,*
     410 F.3d 942 (7th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . 47, 50
*United States v. Cochrane,*
     985 F.2d 1027 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
*United States v. Cohen,*
     262 Fed. Appx. 14 (9th Cir. 2007) . . . . . . . . .   4, 22, 46-48, 50-51, 53
*United States v. Cohen,*
     510 F.3d 1114 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . 4, 5, 22, 53
*United States v. Cook,*
     608 F.2d 1175 (9th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
*United States v. Delfino,*
     510 F.3d 468 (4th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . 34-35, 47

- iv -

Cases (continued):                                                              Page(s)

*United States v. Demma*,
    523 F.2d 981 (9th Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
*United States v. Ellett*,
    527 F.3d 38 (2d Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38
*United States v. Ellis*,
    147 F.3d 1131 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . 47
*United States v. Ellsworth*,
    738 F.2d 333 (8th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
*United States v. Emmert*,
    829 F.2d 805 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47
*United States v. Felak*,
    831 F.2d 794 (8th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
*United States v. Fingado*,
    934 F.2d 1163 (10th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . 44
*United States v. Finley*,
    301 F.3d 1000 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . 21
*United States v. Flewitt*,
    874 F.2d 669 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
*United States v. Gustafson*,
    528 F.3d 587 (8th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . 38
*United States v. Hairston*,
    819 F.2d 971 (10th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . 36, 38, 50
*United States v. Hardy*,
    941 F.2d 893 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
*United States v. Harris*,
    942 F.2d 1125 (7th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . 44
*United States v. Hauert*,
    40 F.3d 197 (7th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . 20, 27
*United States v. Heard*,
    709 F.3d 413 (5th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . 49
*United States v. Hoac*,
    990 F.2d 1099 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . 20
*United States v. Kleinpaste*,
    124 Fed. Appx. 134 (3rd Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . 27
*United States v. Lindsey*,
    634 F.3d 541 (9th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . 36, 51
*United States v. Lussier*,
    929 F.2d 25 (1st Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
*United States v. Malquist*,
    791 F.2d 1399 (9th Cir. 1986) . . . . . . . . . . . . . . . . . 37-38, 40, 42-44
*United States v. Mann*,
    884 F.2d 532 (10th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . 36, 38, 50

- v -

Cases (continued):                                                    Page(s)

*United States v. Olano*,
    507 U.S. 732 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20-21, 24
*United States v. Powell*,
    955 F.2d 1206 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . 43-45
*United States v. Rea*,
    958 F.2d 1206 (2d Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . 27
*United States v. Sayakhom*,
    186 F.3d 928 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47, 50
*United States v. Schaflander*,
    743 F.2d 714 (9th Cir. 1984) . . . . . . . . . . . . . . . . . . . . 14-15, 24, 36
*United States v. Schiff*,
    269 F. Supp. 2d 1262 (D. Nev. 2003),
    *aff'd*, 379 F.3d 621 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . 31
*United States v. Schiff*,
    383 Fed. Appx. 649 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . 5
*United States v. Schiff*,
    801 F.2d 108 (2d Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . 41
*United States v. Schiff*,
    2012 WL 4355543 (D. Nev. 2010) . . . . . . . . . . . . . . . . . . . . . 6, 27
*United States v. Schneider*,
    111 F.3d 197 (1st Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . 21
*United States v. Scholl*,
    166 F.3d 964 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . 20
*United States v. Sioux*,
    362 F.3d 1241 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . 19
*United States v. Stafford*,
    983 F.2d 25 (5th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
*United States v. W.R. Grace*,
    526 F.3d 499 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . 28
*United States v. West*,
    670 F.2d 675 (7th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . 21
*United States v. Willie*,
    941 F.2d 1384 (10th Cir. 1991) . . . . . . . . . . . . . . . . . . 38, 44-46, 51
*United States v. Willis*,
    277 F.3d 1026 (8th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . 47

Statutes:

18 U.S.C.
    § 3231 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    § 371 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    § 641 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

- vi -

Statutes (continued):                                                                     Page(s)

     26 U.S.C.:
          § 7206(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 22
          § 7701(12) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42
          § 7201 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 41
          § 7203 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 43
          § 7206(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

     28 U.S.C.:
          § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
          § 2253(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
          § 2253(c)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
          § 2255 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 4, 6, 13-14, 18

     42 U.S.C.:
          § 408(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

     44 U.S.C.:
          § 1505 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

Miscellaneous:

     Fed. R. App. P.:
          Rule 4(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
          Rule 4(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

     Fed. R. Evid.:
          Rule 401 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
          Rule 402 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 35
          Rule 403 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35, 37, 47, 51
          Rule 608(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

     Federal Rule of Criminal Procedure:
          Rule 12.2(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18-19
          Rule 42(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

- vii -

# GLOSSARY

Br.:     Defendant's opening brief

CAR:  Court of Appeals record on direct appeals, preceded by case number.

EOR:  Defendants' Excerpt of Record, preceded by volume number

D.Ex.:  Defendant's Trial Exhibit

G.Ex.:  Government's Trial Exhibit

IRS:    Internal Revenue Service

PSR:    Presentence Investigation Report prepared by probation office (preceded by defendant's name)

R.:      Original record on appeal in this case, as prepared by the District Court Clerk

No. 12-17712

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT
————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

IRWIN SCHIFF,

Defendant-Appellant
————————————

Appeal from the United States District Court
for the District of Nevada
Honorable Kent J. Dawson, Presiding
————————————

BRIEF FOR THE APPELLEE
————————————

JURISDICTIONAL STATEMENT

This is an appeal from the denial of defendant's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. The district court's jurisdiction arose under 18 U.S.C. § 3231 and 28 U.S.C. § 2255, and its order denying defendant relief constitutes an appealable final order. The district court entered judgment on September 21, 2012, and defendant filed a timely notice of appeal on November 19, 2012 (2EOR. 14).[1] *See* Rule 11 of the Rules Governing Section

———————————————

[1] "R." references are to documents in the district court's record, as numbered by the Clerk of the District Court. "CAR" references, preceded by the case number, are to documents in the court of appeals record. "Br." references are to appellant's opening brief. "EOR" references, preceded by volume number, are to appellant's excerpts of record. "Tr." references are to the court reporter's transcript of proceedings, by date and page number. "G.Ex." references are to the government's trial exhibits.

- 2 -

2255 Proceedings; Fed. R. App. P. 4(a).  The district court issued a certificate of appealability on December 19, 2012.  (2EOR. 13.)  Jurisdiction for this appeal lies under 28 U.S.C. § 1291, 28 U.S.C. § 2253(a), and 28 U.S.C. § 2255.

## ISSUE PRESENTED

Whether defendant received effective assistance of appellate counsel in the direct appeal from his conviction.

## BAIL STATUS

Defendant is currently serving his sentence of incarceration.

## STATEMENT OF THE CASE

On March 24, 2004, a grand jury returned a 33-count indictment charging defendants Irwin Schiff, Cynthia Neun, and Lawrence Cohen with one count of conspiracy to defraud the government for the purpose of impeding and impairing the IRS, in violation of 18 U.S.C. § 371.  (R. 1.)  In addition, the defendants were variously charged with assisting in the preparation of false income tax returns, in violation of 26 U.S.C. § 7206(2), and with crimes relating to their individual income taxes, in violation of 26 U.S.C. §§ 7201, 7203, and 7206(1).[2]  (*Id.*)

On October 25, 2005, after a 23-day trial, the jury returned verdicts finding Schiff and Neun guilty of the conspiracy count.  (R. 286-88.)  Schiff was also found guilty of five counts of assisting in the preparation of false income tax returns, one count of tax evasion, and six counts of filing false income tax returns.

---

[2] Neun was also charged with social security fraud, in violation of 42 U.S.C. § 408(a)(3), and theft of government property, in violation of 18 U.S.C. § 641. (R. 1.)

- 3 -

(R. 286.)  Neun was also found guilty of nine counts of assisting in the preparation of false income tax returns, three counts of willfully failing to file income tax returns, one count of Social Security fraud, and one count of theft of government property.  (R. 287.)  Cohen was only found guilty of one count of assisting in the preparation of a false income tax return.  (R. 288.)  On February 24, 2006, the district court sentenced Schiff to 163 months' incarceration, to be followed by three years' supervised release.[3]  (R. 382.)  Defendants each filed timely notices of appeal.  (R. 372, 384, 391.)

In his first direct appeal, defendant raised numerous claims in his oversized opening brief, including: (1) the district court improperly failed to hold a competency hearing; (2) defendant did not knowingly and intelligently waive his right to counsel; (3) the district court erred in issuing summary contempt convictions; (4) the district court's sentence was unreasonable; (5) the district court erred in denying defendant's recusal motion; (6) there was insufficient evidence to support the convictions; and (7) the cumulative effect of errors by the trial court denied him a fair trial.  (06-10199CAR 33.)  Defendant later discharged the counsel who filed his first brief and attempted to file a second brief authored by new counsel.  This second brief was rejected by the Court.  (06-10199CAR 62.)  In addition to the brief prepared by counsel, defendant filed a separate *pro se*

---

[3] Schiff's sentence comprised 151 months' incarceration on the indicted counts, and 12 months' incarceration for his contempt of court during the trial.  (R. 382.)  Cohen was sentenced to 33 months' incarceration and Neun was sentenced to 68 months' incarceration.  (R. 353, 381.)

- 4 -

brief.[4]  (06-10199CAR 77.)  The government filed an oversized, consolidated responsive brief (06-10199CAR 46), and defendant Schiff filed an oversized reply brief (06-10199CAR 83).

On December 26, 2007, this Court issued a memorandum disposition affirming defendant's convictions and sentence on the criminal tax charges. *United States v. Cohen*, 262 Fed. Appx. 14 (9th Cir. 2007) (unpublished) (Nos. 06-10145, 06-10199).  On the same date, the Court issued a separate published opinion vacating Schiff's convictions for criminal contempt of court and remanding.  *United States v. Cohen*, 510 F.3d 1114 (9th Cir. 2007).  As Schiff's appellate counsel had argued, the Court concluded that it had no choice but to vacate Schiff's contempt convictions because the district court did not file the requisite written contempt orders in accordance with Federal Rule of Criminal Procedure 42(b).  *Id.* at 1119-20.  The Court stated, however, that "we understand the difficulty posed by an irascible *pro se* defendant like Schiff who presents himself in such a challenging manner to a trial judge who is earnestly attempting to maintain a fair and impartial trial through order and decorum in the courtroom." 510 F.3d at 1119.  The Court ruled that, after issuing the proper written orders, the district court could reinstate Schiff's contempt convictions and impose a new contempt sentence. [5] *Id.* at 1120.

---

[4] Neither the second brief that was prepared by counsel and tendered to this Court nor defendant's *pro se* brief raised the issues addressed in this § 2255 motion.

[5]The Court found that the district court had miscalculated the maximum sentence for Schiff's contempt charges and that the maximum sentence was 11 months, not 12.  *Id.*

- 5 -

In addition, the Court reversed the conviction of codefendant Lawrence Cohen, finding that the district court had improperly excluded the testimony of his psychiatric expert. *Id.* at 1122-27. The Court found that the testimony should not have been excluded because it was relevant to Cohen's claim that "Schiff convinced Cohen that one could legally submit a zero return." *Id.* at 1124.

On February 28, 2008, defendant Schiff filed a petition for panel rehearing or rehearing en banc, arguing that his election to proceed *pro se* was not knowing and intelligent and claiming for the first time that the district court had improperly excluded testimony of his psychological expert. (06-10199CAR 105.) The Court denied Schiff's petition for rehearing and issued its mandate on April 29, 2008. (06-10199CAR 111, 114.)

On remand, the district court entered written contempt orders on May 27, 2008. (R. 497-512.) On September 5, 2008, the district court held a resentencing hearing on the contempt charges and sentenced defendant to 11 months' incarceration. (R. 542.) The district court entered an amended judgment on September 8, 2008. (R. 544.) On September 17, 2008, defendant filed a timely notice of appeal. (R. 546.)

Defendant filed his opening brief in his second direct appeal on October 14, 2009, arguing that, pursuant to an intervening case, *Indiana v. Edwards*, 554 U.S. 164 (2008), the district court should not have allowed defendant to proceed *pro se* during his trial. (08-10408CAR 15.) On June 11, 2010, this Court issued an unpublished memorandum disposition rejecting defendant's argument, and affirming his contempt convictions and sentence. *United States v. Schiff*, 383 Fed.

- 6 -

Appx. 649 (9th Cir. 2010) (No. 08-10408).  Defendant filed a petition for writ of certiorari to the United States Supreme Court, which was denied on November 1, 2010.  *Schiff v. United States*, 131 S. Ct. 532 (2010).

On October 31, 2011, defendant filed the instant amended motion to vacate his sentence pursuant to 28 U.S.C. § 2255.  (2EOR 16.)  On September 12, 2012, the district court issued a 12-page memorandum order denying defendant's § 2255 motion.  (1EOR 1.)[6]  Defendant filed a timely notice of appeal On November 19, 2012.  (2EOR 14.)  On December 19, 2012, the district court granted, in part, defendant's request for a certificate of appealability.[7]  (2EOR 13.)

---

[6] *United States v. Schiff*, 2012 WL 4355543 (D. Nev. 2012).

[7] The Certificate of Appealability was granted as to the following:

Does the existing record demonstrate that appellant was deprived of his Sixth Amendment right to the effective assistance of counsel when his attorney failed to raise one or both of the following issues on direct appeal:

a. Did the District Court commit plain error when it granted the government's motion to exclude evidence of Mr. Schiff's bipolar disorder?

b. Did the District Court err when it excluded evidence proffered by the defendant in support of his willfulness defense?

- 7 -

## STATEMENT OF FACTS

In or around 1991, after being released from prison following his second conviction for violating federal income tax law, defendant Irwin Schiff moved to Las Vegas and opened a sole proprietorship, Freedom Books.  (3Tr. 729, 746-47; 15Tr. 3984-85.)  Freedom Books sold books, audio tapes, videos, and instructional packages, all authored by Schiff and priced from $38 to over $1,500.  (2Tr. 355-58, 405-06; 4Tr. 906, 941; 8Tr. 2083; 9Tr. 2199, 2347, 2431; 10Tr. 2702.)  The materials purported to advise customers on how to "legally stop paying income taxes."  (2Tr. 285, 340; 6Tr. 1465; 18Tr. 4693.)  In addition, Schiff offered personal consultations charging as much as $240 per hour.  (2Tr. 397.)  Schiff marketed his materials through a weekly radio program co-hosted by codefendant Cynthia Neun and through a series of seminars held across the country.  (2Tr. 373, 389, 416; 4Tr. 928; 6Tr. 1450; 8Tr. 2103; 9Tr. 2274, 2347, 2413, 2497; 10Tr. 2782-83; 13Tr. 3418, 3547.)  Both Neun and codefendant Cohen worked at Freedom Books, selling products, advising customers, assisting in the preparation of tax returns, and acting as representatives of their customers in disputes with the IRS.  (2Tr. 606; 4Tr. 923-24, 952, 1010-15, 1365-66; 7Tr. 1766; 9Tr. 2415-16; 10Tr. 2691; 14Tr. 3706, 3754-55.)  The result of the scheme was that Freedom Books' sales brought in millions of dollars in revenue for Schiff and his codefendants (15Tr. 4029), while Freedom Books' customers bought worthless advice that left them owing the IRS taxes, penalties, and interest.  (2Tr. 394, 422; 3Tr. 587, 593, 598; 4Tr. 947; 8Tr. 2080, 2141-49, 2080; 9Tr. 2221, 2296, 2362, 2444; 10Tr. 2709-10, 2796; 11Tr. 2908.)

- 8 -

Central to Schiff's scheme was the "zero" return, a federal individual income tax return containing a zero on every line related to income and expenses and, in most cases, seeking a refund of all federal income taxes withheld during the tax year for which it was filed. (6Tr. 1559-69; 7Tr. 1584-86.) Attached to each "zero" return was a two-page document written by Schiff and sold to his customers, which contained his contention that there is no law requiring the payment of federal income tax. (2Tr. 371; 8Tr. 1972; 6Tr. 1560; 7Tr. 1584-86.)

Schiff's book, *The Federal Mafia*, priced at $38, provided customers with the basic instructions on how to file a "zero" return. (2Tr. 340-41, 355; 10Tr. 2718.) In addition, the book instructed customers on how to submit to an employer a false Form W-4 claiming the customer was "exempt" from federal income tax withholding. (2Tr. 342, 355, 367; 5Tr. 1207; 8Tr. 2038, 2127; 9Tr. 2405; 13Tr. 3548-49.) Many customers had their "zero" returns prepared personally by Schiff, Neun, or Cohen for a fee ranging from $50 to $2000. (7Tr. 1766; 9Tr. 2282, 2415-16, 2494-95, 2504-09; 13Tr. 3560-62.) Having been told to expect tax refunds, Freedom Books' customers were usually surprised to receive correspondence from the IRS stating that their "zero" returns were deemed frivolous and warning them that monetary penalties were a possibility. (8Tr. 2038, 2091; 9Tr. 2286; 10Tr. 2657; 13Tr. 3423-25; 16Tr. 4253.) After receiving such correspondence, customers would often contact Freedom Books for further assistance. (3Tr. 665; 4Tr. 900-01; 7Tr. 1775; 8Tr. 1979, 2135; 9Tr. 2286, 2361, 2432; 10Tr. 2673, 2795; 13Tr. 3423-35.) Schiff, Neun, or Cohen would then sell the customers additional materials supposedly meant to assist them in responding to the IRS. (3Tr.665-69, 683, 724; 4Tr.902-03, 912; 6Tr.1489-91; 7Tr.1807; 8Tr.1968, 1979;

- 9 -

9Tr.2199, 2286; 10Tr.2804; 11Tr.2853.)  In general, these materials directed customers to inundate the IRS with frivolous correspondence arguing against the validity of federal income tax law and requesting administrative hearings on the issue.  (9Tr. 2361-62; 10Tr. 2663, 2798;13Tr. 3623.)  Customers were not told that the techniques recommended by Schiff and his codefendants were never successful in extinguishing tax liability.  (2Tr.371-72, 408-09; 3Tr.629, 750-51; 4Tr.923-24, 1152; 7Tr.1767-75; 8Tr.2095, 2135; 9Tr.2337, 2395; 10Tr.2774; 11Tr.2904; 13Tr.3503; 17Tr.484.)

Numerous customers testified at trial about their experiences after purchasing products from Freedom Books and filing "zero" returns with the assistance or advice of Schiff and his codefendants.  (4Tr.890; 7Tr.1770; 8Tr.1969, 2052, 2186; 9Tr.2405, 2202, 2279, 2351-52; 10Tr.2653-54, 2789-90; 11Tr.2905-06; 13Tr.3421.)  For example, Toni Mitchell went to Freedom Books and purchased *The Federal Mafia* after hearing Schiff's radio program.  (2Tr. 338-40.) Based on the information in the book, Mitchell filed amended "zero" returns for 1996 and 1997 seeking refunds of all taxes she had paid.  (2Tr. 341-42.)  In April of 2000, she began working part-time at Freedom Books.  (2Tr. 336, 343-44.) Schiff paid Mitchell $10 per hour in cash, which was handed to her in an envelope. (2Tr. 344.)  Mitchell prepared between 20 and 40 "zero" returns for customers of Freedom Books. (2Tr. 374.)  Mitchell also filed a "zero" return for herself for the year 2000, seeking refunds of all taxes withheld from her wages during the year. (2Tr. 341-42.)  Mitchell never received a tax refund; instead, she received letters from the IRS stating that her returns were frivolous and imposing penalties.  (2Tr. 379-84.)  On advice of Schiff, Mitchell sought to appeal.  (*Id.*)  Mitchell lost her

- 10 -

appeal with the IRS and with the district court.  (2Tr. 404, 407.)  By the time of the trial, there was a $17,000 lien on Mitchell's home and she had been forced to file bankruptcy.  (2Tr. 394, 422.)

The evidence at trial demonstrated that, from January 1, 1997, through December 31, 2002, Freedom Books had gross business sales of at least $3.7 million.[8]  (15Tr. 4029; Schiff PSR 6.)  The IRS estimated that it had received approximately 4,950 "zero" returns containing Schiff's two-page attachment. (Schiff PSR 5; 6Tr.1560-69.)

In addition to selling millions of dollars of Freedom Books' products while assisting others in filing false tax returns, Schiff also individually failed to comply with federal income tax law.  Schiff has not reported any income for any year since at least 1987 and owes more than $2 million in taxes.  (6Tr. 1428-29; 15Tr. 3981.) The IRS took numerous steps to collect the taxes due from Schiff.  (11Tr. 2953-3029.)  Schiff, however, concealed his income and assets from the IRS by using bank accounts with false tax identification numbers, placing assets in the names of nominees, holding funds in offshore bank accounts and trust accounts, and utilizing a warehouse bank. [9]  (5Tr.1270-80, 1315, 1327-32; 7Tr.1842-49; 10Tr.2569-72, 2636-41; 11Tr.3006, 3028; 14Tr.3751; 15Tr.3987-88.)

---

[8] The IRS was unable to determine the exact amount of income received by Freedom Books because of the lack of business records and the extensive use of cash at the business.  (2Tr.346; 4Tr.921-22; 5Tr.1282-95, 1299-1300, 1306-08, 1318; 6Tr.1473, 7Tr.1792, 1795-98; 1801-02; 8Tr.2066.)  Between 2000 and 2002, checks written to cash on Freedom Books' bank accounts totaled over $550,000. (15Tr. 4026.)

[9] A warehouse bank is an unregulated entity that holds itself out as a bank, yet merely pools funds deposited with the entity into accounts at legitimate banks. It purports to not keep records, so that funds of individual customers and their holdings cannot be identified by the government or other third parties.  (10Tr. 2569-72.)

- 11 -

## SUMMARY OF ARGUMENT

1.  Defendant's appellate counsel was not ineffective when he chose not to argue that the district court committed plain error in excluding the expert psychological testimony of Dr. Daniel S. Hayes.  The district court left the door open for Dr. Hayes' to testify, but defendant never called Dr. Hayes as a witness. Even if the district court's ruling did constitute a definite rather than tentative exclusion of Dr. Hayes' testimony, any error was not plain, as this Circuit's case law gives a trial court broad discretion to exclude expert testimony concerning a defendant's mental state.  Moreover, the exclusion was harmless: psychological testimony could not have overcome the overwhelming evidence of defendant's guilt.

2.  Defendant's appellate counsel was not ineffective in declining to argue that the district court abused its discretion in excluding the testimony of five witnesses.  Defendant did not lay an adequate foundation to establish that he relied on the witnesses in forming any of his purported beliefs.  Indeed, most of the purposed testimony was irrelevant to that issue.  Even if the district court did improperly exclude the testimony, any error was harmless, as the testimony was cumulative of the testimony of other witnesses who testified at trial.  Moreover, defendant was permitted to testify at trial, fully explaining his purported beliefs, and this was the best evidence of his beliefs that could be put before the jury.

3.  Defendant's appellate counsel was not ineffective when he declined to argue that the district court abused its discretion in excluding certain legal materials.  This Court has held a trial court may exclude legal materials from

- 12 -

evidence because of the risk that such materials will mislead and confuse the jury. Moreover, the legal materials that defendant claims were improperly excluded were either not properly offered into evidence or irrelevant to defendant's purported beliefs. Even if the district court did improperly exclude the legal materials, any error was harmless. Defendant was permitted to testify at trial, fully explaining his purported beliefs and the materials upon which he claimed to rely.

4. Defendant's appellate counsel was not ineffective in declining to argue that the district court abused its discretion in excluding a book defendant wrote and a video of defendant speaking at a seminar. The book and video were properly excluded because they contained misstatements of the law, inadmissible hearsay and other irrelevant materials, and would have resulted in undue delay and the needless presentation of cumulative evidence. Even if the district court did improperly exclude the book and video, any error was harmless for the same reason any error in excluding the legal materials was harmless: defendant was permitted to testify at trial, fully explaining his purported beliefs, and introduction of this evidence would have been cumulative of defendant's testimony. Furthermore, admission of the items could not have overcome the overwhelming evidence of defendant's guilt.

- 13 -

ARGUMENT

DEFENDANT RECEIVED EFFECTIVE ASSISTANCE
OF COUNSEL IN THE DIRECT APPEAL OF HIS
CONVICTION

*Standard of review*

This Court reviews *de novo* both the denial of a Section 2255 motion and a

determination that the defendant received his Sixth Amendment right to effective

assistance of counsel. *Frazer v. United States*, 18 F.3d 778, 781 (9th Cir. 1994).

However, the district court's factual findings relating to its ruling on the Section

2255 motion are reviewed for clear error. *United States v. Alvarez-Tautimez*, 160

F.3d 573, 575 (9th Cir. 1998).

*Argument*

Defendant asserts (Br. 15-50) that he did not receive effective assistance of

counsel in the direct appeal of his conviction. Specifically, defendant argues (Br.

18-49) that his appellate counsel was ineffective by not raising four specific issues

with respect to the district court's evidentiary rulings: (1) whether the district court

erred by excluding defendant's psychological expert; (2) whether the district court

abused its discretion by excluding certain testimony related to Schiff's good faith

defense; (3) whether the district court abused its discretion by denying the

admission of certain legal materials as trial exhibits; and (4) whether the district

court abused its discretion by excluding defendant's book and a video tape of his

appearance at a seminar as trial exhibits. Defendant claims that he was prejudiced

- 14 -

by the alleged deficiencies of his appellate counsel.  Defendant is wrong in all respects.

To obtain a reversal of a conviction for ineffective assistance of counsel, a defendant must establish both (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that there is a reasonable probability that the results of the proceeding would have been different had counsel's performance not been deficient.  *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984); *United States v. Schaflander*, 743 F.2d 714, 717 (9th Cir. 1984).  The standards enunciated in *Strickland* also apply to challenges to the effectiveness of appellate counsel.  *See United States v. Birtle*, 792 F.2d 846, 847 (9th Cir. 1986).  Under the first *Strickland* prong, the Section 2255 defendant must demonstrate that counsel's conduct was constitutionally deficient in that it fell below an objective standard of reasonableness.  *See* 466 U.S. at 688.  In evaluating counsel's performance, courts must not engage in the distorting analysis of hindsight; rather, they must evaluate the reasonableness of counsel's performance within the context of the circumstances at the time of the alleged errors.  *See id.* at 690.  Furthermore, because counsel's competence is presumed, a defendant must rebut this presumption by proving that his counsel's representation was unreasonable under prevailing professional norms.  *See Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986).  Reviewing courts must remain "highly deferential" in scrutinizing counsel's performance, affording a strong presumption that the performance was reasonable.  *Strickland,* 466 U.S. at 689; *United States v. Cochrane*, 985 F.2d 1027, 1030 (9th

- 15 -

Cir. 1993).  "[A]ppellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal."  *Smith v. Robbins*, 528 U.S. 259, 285 (2000) (stating that "it is difficult to demonstrate that counsel was incompetent" based on appellate counsel's failure to raise a particular claim ).  Thus, only when "'ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome.'"  *Id*. (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)).

To satisfy the second prong, the defendant must demonstrate that counsel's deficient performance caused him prejudice.  *See Strickland*, 466 U.S. at 687; *Schaflander*, 743 F.2d at 717.  In order to establish this, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  *See Strickland*, 466 U.S. at 694. Reviewing courts "must consider the totality of the evidence before the judge or jury" in determining the likelihood of a different result.  *Id* at 695.  The burden is on the defendant, and unless he proves both prongs, his claims fail.  *See id.* at 687. Defendant has not met his burden.

1.  Testimony of Psychological Expert

Defendant erroneously contends (Br. 18-30) that his appellate counsel was ineffective when he failed to argue that the district court abused its discretion in excluding the expert psychological testimony of Dr. Daniel S. Hayes.

On September 7, 2004, defendant Schiff filed a document (R. 56) stating that

- 16 -

he "may wish to call" as witnesses relating to his alleged "delusional disorder" Luis Carlos Ortega, M.D., Dr. Cynthia Barry, Ph.D., and attorney William A. Cohan.  On October 21, 2004, the government filed a Motion to Clarify Notice and Compel Defendant Schiff To Submit to Examination by Government's Expert.  (R. 61.)  On February 4, 2005, the district court granted the government's motion to compel Schiff to submit to a psychological examination.  In March 2005, the government's psychologist, Daniel S. Hayes, Ph.D., submitted his examination report.  (R. 147, Ex. 2.)  Dr. Hayes concluded that defendant had bipolar disorder and a mood disorder, but rejected the diagnosis of "delusional disorder" offered by defendant's psychiatric experts.  (R. 147, Ex. 2.)  In part, Dr. Hayes concluded that Schiff "appears to have extremely rigid, fixed, inflexible, doggedly determined opinions and beliefs that cannot be changed by others' reasoning."  (*Id.*)  He also concluded that Schiff was competent to stand trial.  (*Id.*)

On May 26, 2005, in response to the government's motion for a second *Faretta* hearing, defendant agreed to a second *Faretta* hearing and moved to dismiss all counts based on psychological evidence.  (R. 147.)  In this response, defendant also discussed the possibility of calling Dr. Hayes, stating that if the government did not call Dr. Hayes, he might.  (*Id.*)  Codefendant Cohen filed notice (R. 152) on June 15, 2005, that he intended to offer expert testimony of psychiatrist Dr. Norton A. Roitman relating to Cohen's alleged narcissistic personality disorder.  On July 12, 2005, the government filed its Motion to Exclude Evidence That Defendant Schiff Suffers From Bipolar Disorder and That Defendant Cohen Suffers From Narcissistic Personality Disorder.  (R. 162.)  Codefendant Cohen filed a

- 17 -

response in opposition (R. 165) to the government's motion to exclude, but defendant Schiff did not. On September 9, 2005, the district court tentatively granted in a written order the government's motion to exclude. (R. 225; *see* 1EOR 5.)

Even if the written order was not explicitly tentative, as defendant appears to assert (Br. 20-21), the district court made clear on several occasions that it was specifically deferring consideration of the admissibility of the testimony of Schiff's psychological expert. (See, e.g, 1Tr. 15-17, 21, 228-29; 2Tr. 233-34; 2EOR 123-130.) During the last colloquy on the subject, although the court did express strong reservations about the admissibility of the expert's testimony, the court nevertheless ruled: "If you wish to have him here, I'll let the government take him on voir dire. But there is nothing that he can testify to that – that would negate *mens rea*. And so – . . . I'm telling you it's not likely I'll let him testify. So you decide."[10] (2 EOR 110 (Day 16 of trial).) The district court did not exclude the testimony, but deferred its decision on the matter until the expert could be examined through voir dire. (See also 2EOR 130 (government requesting to voir dire Dr. Hayes if defendant calls him as witness (Day 2 of trial); 2EOR 114-15 (court stating that it had not yet ruled on admissibility of Hayes' testimony (Day 10 of trial).) Defendant, however, chose not to present his psychological expert as a witness, and the issue was never decided

---

[10] Defendant interprets (Br. 22) the court's statement as excluding Dr. Hayes' testimony as it related to defendant's mens rea, but leaving open the possibility of his testimony on other subjects. But there was no discussion of Dr. Hayes' testimony being relevant to any subject other then defendant's mens rea.

- 18 -

by the district court.  Thus, defendant had no ruling to challenge.[11]  *See Luce v. United States*, 469 U.S. 38, 41-42 (1984) (defendant cannot challenge *in limine* ruling allowing impeachment evidence unless defendant testifies at trial, since any prejudice is purely speculative), *overruling United States v. Cook*, 608 F.2d 1175, 1186 (9th Cir. 1979) (en banc); *Tennison v. Circus Circus Enterprises*, 244 F.3d 683, 688-89 (9th Cir. 2001) (tentative *in limine* ruling excluding evidence may only be challenged if there is attempt to offer evidence at trial).  Under these circumstances, where defendant never called his psychological expert as a witness and the district court's tentative ruling never became final, it was eminently reasonable for appellate counsel not to raise this argument on direct appeal.  *See Tennison*, 244 F.3d at 688-89.

Defendant nevertheless argues that his appellate counsel must have been ineffective because codefendant Cohen successfully appealed the district court's exclusion of his psychiatric expert's testimony regarding Cohen's narcissistic personality disorder.  But unlike the district court's ruling regarding Schiff's psychological expert, the court's ruling on Cohen's psychiatric expert was not tentative.[12]  Additionally, unlike codefendant Cohen, defendant Schiff did not preserve the issue for appeal.  First, Schiff failed to file a proper expert notice for

_____

[11] In denying defendant's § 2255 motion, the district court correctly concluded that its ruling was only tentative.  (1EOR5.)  That factual finding is reviewed for clear error.  *Alvarez-Tautimez*, 160 F.3d at 575.

[12] Unlike the court's colloquy with Schiff, the court stated that its decision on Cohen's expert was not subject to reconsideration and the government did not argue on direct appeal that the exclusion of Cohen's psychiatric expert was tentative.  (18Tr. 4942-44 (court stating ruling on Cohen's expert not subject to reconsideration.); 06-10199CAR 46; 1EOR6 & n.1.)

- 19 -

Dr. Hayes, as required by Federal Rule of Criminal Procedure 12.2(b).  Further, he failed to offer any response in opposition to the government's motion to exclude the testimony.  (1EOR 6.)  By contrast, codefendant Cohen not only properly filed a Rule 12.2(b) notice and opposed the government's motion to exclude, but also preserved the issue of the relevance of his psychological expert's testimony by setting forth on the record the specific reasons he believed the testimony to be relevant.  (R. 152; 1EOR 6; 18Tr. 4942-43.)  Defendant Schiff provided no on-the-record explanation of how Dr. Hayes could provide relevant, admissible testimony negating Schiff's mens rea.[13]  (1EOR 6.)  Thus, even if defendant's counsel had raised the issue on appeal, instead of the abuse of discretion standard applicable to Cohen's preserved claim, review of Schiff's claim would have been for plain error because Schiff failed to oppose the motion to exclude or object to the court's ruling. *See United States v. Sioux*, 362 F.3d 1241, 1244 n.5 (9th Cir. 2004) (plain error review proper when defendant did not "raise the specific objection he now presses").[14]

---

[13]  Defendant asserts (Br. 25 (citing 2EOR 168)) that he adequately preserved the issue by mentioning it in his response to the government's request for a second *Faretta* hearing.  But defendant had not provided notice that he intended Dr. Hayes as an expert at that time and only discussed the possibility of calling Dr. Hayes as a witness if the government did not.  At the second *Faretta* hearing, defendant did not state that he intended to call Dr. Hayes.  To the contrary, he stated that he had significant reservations about using any psychological evidence as part of his defense.  (9/06/2005Tr. 26-35.)  The record, taken as a whole, does not make clear whether defendant really intended to call Dr. Hayes as a witness at all.

[14]  Defendant improperly argues (Br. 26-28) that the standard of review should be abuse of discretion and not plain error.  Such an argument is outside of the parameters of the Certificate of Appealability, which was granted as to the question of whether "the District Court commit[ted] plain error" as to its rulings regarding Schiff's psychological expert (2EOR13).  *See* 28 U.S.C. § 2253(c)(3).

- 20 -

Defendant's appellate counsel was not objectively unreasonable in deciding not to argue that it was plain error to exclude Dr. Hayes's testimony.[15] The error, if any, was not "plain": this Court and others have upheld a district court's exclusion of expert psychological testimony concerning a defendant's mens rea. *See, e.g., United States v. Scholl*, 166 F.3d 964, 971 (9th Cir. 1999) (in a tax case, trial judge properly excluded psychological expert testimony that defendant's compulsive gambling disorder caused "distortions in thinking"); *United States v. Hoac*, 990 F.2d 1099, 1103 (9th Cir. 1993) (upholding a district court's exclusion of psychological expert's testimony regarding defendant's intellect and general naivete); *United States v. Binder*, 769 F.2d 595, 602 (9th Cir. 1985) (psychological testimony that witness was "able to distinguish reality from fantasy and truth from falsehood" improperly admitted); *see also United States v. Hauert*, 40 F.3d 197, 200 (7th Cir. 1994) (psychiatric opinion that taxpayer-defendant "manifests a good faith belief" is properly excluded); *United States v. Felak*, 831 F.2d 794, 797-98 (8th Cir. 1984) (in a tax evasion case, trial court properly excluded psychiatric testimony that taxpayer's compulsive disorder led to mistaken belief in voluntary income tax payments, even though such testimony suggested an absence of willful intent); *United States v. Ellsworth*, 738 F.2d 333, 336-37 (8th Cir. 1984)

---

[15] Plain error exists where (1) there is an "error," (2) that is "plain," and (3) the error affects "substantial rights." *United States v. Olano*, 507 U.S. 725, 732 (1993). An "error" is any "[d]eviation from a legal rule," and it is "plain" if it is "clear" or "obvious." *Id*. at 732-34. An error affects "substantial rights" if the defendant is prejudiced in such a manner as to "affect[ ] the outcome of the district court proceedings." *Id*. at 734-35. Even where these conditions exist, a court of appeals on plain error review should reverse a conviction only where the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Id*. at 736.

- 21 -

(psychiatrist's proffered testimony that taxpayer had a good-faith belief that income tax was voluntary was properly excluded); *United States v. Schneider*, 111 F.3d 197, 203 (1st Cir. 1997) (in a mail and wire fraud case, expert testimony that defendant suffered from "chemical dependency and major depression with probable mania [and] impair[ed] . . . judgment" offered to show lack of intent to defraud was properly excluded); *United States v. West*, 670 F.2d 675, 682 (7th Cir. 1982) (district court properly excluded expert testimony about bribery defendant's limited intelligence offered to show defendant's good faith belief that he had accepted a legitimate gift); *but see United States v. Finley*, 301 F.3d 1000, 1013-14 (9th Cir. 2002) (district court erred in excluding testimony of psychological expert).  Indeed, this Court has recognized the "'wide latitude [afforded to the district court] in admitting or excluding psychiatric evidence directed to the capacity of a defendant to entertain a specific intent.'"  *United States v. Demma*, 523 F.2d 981 (9th Cir. 1975) (en banc) (upholding exclusion of psychiatric testimony offered to negate the defendant's mens rea); *United States v. Byers*, 730 F.2d 568, 571 (9th Cir. 1984). Given this well-established case law, Schiff could not have established that the district court's ruling constituted a clear or obvious deviation from a legal rule. *Olano*, 507 U.S. at 732-34.

Furthermore, this Court's decision regarding codefendant Cohen's psychiatric expert does not establish that Schiff's appeal of this issue would have similarly led to reversal.  If defendant's appellate counsel had raised this issue, there is no indication that this Court would have found that the district court's exclusion of Schiff's psychological testimony rose to the level of plain error.  There is also

- 22 -

nothing to suggest that exclusion of the expert was anything other than harmless.  In its opinion in the direct appeal, this Court stated that Dr. Roitman's testimony was probative of Cohen's claim that "Schiff convinced Cohen that one could legally submit a zero return."  *Cohen,* 510 F.3d at 1124.  The Court placed great emphasis on the fact Dr. Roitman specifically concluded that Cohen "did not intend to violate the law," finding that "[i]f Dr. Roitman had been allowed to testify to that effect, his testimony would have assisted the trier of fact."  *Id.*  Dr. Hayes' report concerning Schiff contains no similar conclusion.  Accordingly, testimony by Dr. Hayes would not have assisted the jury in the same way as testimony for codefendant Cohen by Dr. Roitman.  Nor would such testimony have been able to overcome the overwhelming evidence that Schiff intended to deceive.  Moreover, unlike Cohen, who was a minor participant, an employee at Schiff's bookstore who was acquitted on the conspiracy charge, and received a 3-level minimal role reduction (see Cohen PSR ¶ 42),[16] Schiff was convicted on all charges and received a 4-level aggravating role enhancement for being a "leader or organizer."  (Schiff PSR ¶ 43.)  Indeed this Court found that "the evidence of [Schiff's] guilt was overwhelming, particularly the evidence that he intended to deceive the government through the use of 'zero returns.'"  *Cohen*, 262 Fed. Appx. at 16.

The evidence that defendant acted willfully and with a lack of good faith with respect to the false returns and that he intended to impede the IRS through the filing

---

[16]  In addition, Cohen was in poor health.  In June 2009, after the reversal of his conviction by this Court, Cohen entered into a plea agreement under which he pleaded guilty to one count of violating 26 U.S.C. § 7206(2) (assisting in the preparation of a false tax return).  (R.581, 582.)  Cohen passed away before being sentenced.  (R.588.)

- 23 -

of the false returns was overwhelming.  There was ample evidence that defendant was aware that his claimed beliefs regarding tax law lacked any merit.  In 1991, he was found in violation of a previous probation order because he filed a zero return. (3Tr. 730-47.)  Defendant was aware that numerous tax returns submitted by his clients had been returned as frivolous by the IRS and had resulted in penalties upheld by courts.  (8Tr. 2038, 2091; 9Tr. 2286; 10Tr. 2657; 13Tr. 3423-25; 16Tr. 4253.)  Defendant was aware, and admitted, that his positions were rejected in every court to address them.  (3Tr. 636, 709, 730, 750-51; 4Tr. 775-76, 861; 9Tr. 2219-21, 2252; 111Tr. 2966-72; 13Tr. 3420; 18Tr. 4784.)  Nevertheless, defendant specifically advised his customers to repeatedly state "I believe," in order to bolster a *Cheek* good faith defense.  (18Tr. 4871.)

The evidence also showed that defendant counseled his customers to undertake any number of affirmative acts of misrepresentation.  (See 3Tr. 341; 10Tr. 2718; 12Tr. 2966-79, 2983.)  At defendant's direction, his customers consistently claimed to be "exempt" from income taxes on their Forms W-4, in order to prevent their employers from withholding taxes from their wages.  (2Tr. 342, 367; 5Tr. 1207; 8Tr. 2038, 2127; 9Tr. 2405; 13Tr. 3548-49.)  Schiff also counseled clients to transfer income offshore and into trusts in order to hide the income from the government.  (2Tr. 417; 5Tr. 1315, 1327-32; 7Tr. 1842-43; 14Tr. 3743-50; 15Tr. 4041-46.)  If defendant truly believed that he or his customers did not owe tax on the income, there would have been no reason to conceal their income.

After his bank account was levied upon by the IRS, defendant opened bank accounts under false Taxpayer Identification Numbers.  (4Tr. 796; 5Tr. 1270-80;

- 24 -

11Tr. 3021-25; 15Tr. 3987-88.)  Defendant also used the services of an unlawful warehouse bank that disguised the ownership of accounts, and he transferred funds offshore to conceal them from the IRS.  (4Tr. 800; 5Tr. 1270-80, 1315, 1327-32; 7Tr. 1842-49; 10Tr. 2569-72, 2636-41; 11Tr. 3006, 3028; 14Tr. 3751; 15Tr. 3987-88.)  After defendant's car was seized by the IRS, he purchased another vehicle but titled it in the name of a friend.  (11Tr. 3002-06, 3028-29.)  Defendant also failed to maintain any books and records for his bookstore.  (2Tr. 346; 5Tr. 1282-95; 7Tr. 1796; 15Tr. 3982-85.)  Because of Schiff's use of false identification information, nominee ownership, offshore bank accounts, and his lack of books and records, the government was unable to determine the disposition of the majority of $3.7 million in revenue received by Freedom Books from 1997 through 2002.  (15Tr. 4029; Schiff PSR 6.)

Defendant's appellate counsel was not objectively unreasonable when he elected not to argue that it was plain error to exclude Dr. Hayes's testimony.  The error, if any, was not plain and, at any rate, was harmless in light of the overwhelming evidence of Schiff's guilt.[17]  *Schaflander*, 743 F.2d at 717.

---

[17] Certainly defendant has not demonstrated, as he is required to by *Olano*, that the exclusion of the psychological testimony "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings."  *Olano*, 507 U.S at 736. The jury was able to observe the defendant over 23 days of the trial and listen to several days of his testimony concerning his beliefs, and was in the best position to determine the character of his actions, statements, and purported beliefs.

- 25 -

2. Testimony of Five Witnesses

Defendant next wrongly asserts (Br. 30-41) that his appellate counsel was ineffective by not arguing that the district court abused its discretion in excluding certain testimony from five witnesses – John Turner, Noel Spaid, Robert Schulz, Robert Eiler, and Robert Wellesley – on whom defendant claims he relied in forming his purported beliefs.

In an offense arising under tax law, a defendant's subjective good faith belief that his or her conduct does not violate any of the provisions of the Internal Revenue Code may constitute a valid defense. *See Cheek v. United States*, 498 U.S. 192, 202 (1991); *United States v. Bishop*, 291 F.3d 1100, 1106-07 (9th Cir. 2002). Accordingly, evidence of a defendant's subjective belief is relevant and properly admissible at trial. *See* Fed. R. Evid. 402. However, *Cheek* distinguished between "innocent mistakes caused by the complexity of the Internal Revenue Code," on the one hand, and positions that "reveal full knowledge of the provisions at issue and a studied conclusion, however wrong, that those provisions are invalid and unenforceable," on the other. *Cheek*, 498 U.S. at 205. With regard to this second category, the Court held that "a defendant's views about the validity of the tax statutes are irrelevant to the issue of willfulness." *Id.* at 206. Therefore, "violating a tax statute because one believes the statute is invalid constitutes a 'refus[al] to utilize the mechanisms provided by Congress to present . . . claims of invalidity,' and the state of mind behind such a refusal does not offer a defense to willfulness." *Banister v. U.S. Dept. of the Treasury,* 2012 WL 5951426 at *1 (9th Cir. November 23, 2012) (unpublished) (quoting *Cheek*, 498 U.S. at 206). Thus, while a "good-

- 26 -

faith misunderstanding" of the law may be a defense, a "disagreement" with the law

is not.[18]  *Cheek*, 498 U.S. at 203; *see also United States v. Bonneau*, 970 F.2d 929,

931-32 (1st Cir. 1992) ("*Cheek* draws a practical distinction between 'innocent

mistakes caused by the complexity of the Internal Revenue Code' and constitutional

and philosophical objections that taxpayers may sincerely hold but are likely to

know have been rejected by the courts." (quoting *Cheek*, 498 U.S. at 205-06)

(internal citations omitted)).

Furthermore, because it is a defendant's subjective belief that is key, the

understanding or belief of a third party, standing alone, is not relevant.  *See Bishop*,

291 F.3d at 1112 (state of mind of non-defendant not an issue at trial).  There must

be some foundational bridge showing that defendant was aware of a third party's

theories and acted on that information if proposed third-party testimony is to be

admissible as circumstantial evidence that the defendant's reliance on a third party's

theories was in good faith.  *See United States v. Lussier*, 929 F.2d 25, 31 (1st Cir.

1991) (evidence admissible to establish defense to willfulness only where there is

some direct link connecting the evidence to defendant).  If a defendant attempts to

offer testimony as support for a good faith defense, the defendant must first show

------------------------

[18] Defendant asserts (Br. 31 n.13 (emphasis in original)) that "[t]he Supreme
Court has held that evidence that a defendant knew what the tax statute required, or
what case law held, but disagreed on *constitutional* grounds, does *not* negate
willfulness," citing *Cheek v. United States*, 498 U.S. at 205-06.  To the extent that
this sentence is worded to infer that a disagreement on nonconstitutional grounds
can negate willfulness, it is incorrect.  While a good-faith misinterpretation of a
law can constitute a defense to willfulness, a disagreement with the law does not.
*See Cheek*, 498 U.S. at 205-06.

- 27 -

that he actually relied on the materials in forming his beliefs.  *See id.*; *United States v. Stafford*, 983 F.2d 25, 27-28 (evidence on which defendant "claimed to rely in the formation of his beliefs" may be admissible to demonstrate good faith) (5th Cir 1993); *United States v. Bostian*, 59 F.3d 474, 480 (4th Cir. 1995).  However, while evidence regarding the formation of a defendant's beliefs may be admissible, the rules of evidence do not permit third-party lay witness testimony about how sincerely a defendant held his or her belief regarding an obligation to pay income tax.  *United States v. Hauert*, 40 F.3d 197, 200 (7th Cir. 1994) (lay opinion testimony regarding sincerity of defendant's beliefs about propriety of his filing returns and paying taxes was properly excluded); *United States v. Rea*, 958 F.2d 1206, 1216 (2d Cir. 1992); *see, e.g., Schiff,* 2012 WL 4355543 at *5 (citing *United States v. Kleinpaste*, 124 Fed. Appx. 134, 139 (3rd Cir. 2005) (district court "properly limited lay witness testimony on perceptions of [defendant's] sincerity in his beliefs of tax code requirements" because "[h]ow an individual witness may have gauged the depth of [defendant's] conviction has no bearing on the ultimate issue before the jury: whether it found that [defendant's] beliefs satisfied the good faith requirement")).  A district court's decision to exclude evidence is reviewed for an abuse of discretion.  *Bishop*, 291 F.3d at 1108.   As an initial matter, Schiff failed to file a witness list as required by the district court's pretrial order.  (See R. 192; see, e.g., R. 259 (codefendant Neun's witness list).)  The district court's exclusion

- 28 -

of the subject testimony from these five witnesses was proper on that basis alone.[19]
*See United States v. W.R. Grace*, 526 F.3d 499, 516 (9th Cir. 2008) (en banc)
(district court may exclude witnesses not included on pretrial witness list).
Additionally, because of defendant's failure to file a list of trial witnesses and his
subsequent attempts to call witnesses whose testimony was not relevant, the court
specifically ordered Schiff to file a written proffer for each witness before calling
the witness at trial.  (2EOR 94.)  Despite the court's order, defendant failed to file a
written proffer for either Robert Eiler or Robert Wellesley.  (See 2EOR 94.)[20]

Of these five witnesses upon whom defendant claims to have relied in
reaching what he says are his beliefs about the propriety of his conduct, the district

---

[19] In a footnote (Br. 25 n.10), defendant mistakenly argues that, because he
was acting *pro se*, his compliance with the trial court's orders should only be
subject to a "liberally" applied standard of review.  But here, defendant chose to
represent himself, rejecting appointed counsel.  In such cases, *pro se* status does
not excuse a criminal defendant from complying with the procedural rules of the
court.  *See United States v. Flewitt*, 874 F.2d 669, 675 (9th Cir. 1989) (the decision
to proceed *pro se* "as with all the other strategic decisions made by a *pro se*
litigant, is his own [and] [h]aving refused . . . assistance . . . he may not be heard to
complain later that the court failed to protect him from his own ineptitude.");
*United States v. Barron*, 575 F.2d 752, 757-58 (9th Cir. 1978) (district court did
not abuse its discretion in excluding *pro se* defendant's alibi witnesses because
defendant's Rule 12.1 response to government's request for notice of alibi
witnesses was filed one day late); *see also Faretta v. California*, 422 U.S. 806,
835-36 (1975) (stating that a *pro se* defendant is required to follow the ground
rules of trial procedure).

[20] Despite failing to file a pretrial witness and exhibit list as ordered by the
court, Schiff had ample time to prepare and file numerous frivolous pretrial
motions.  (See, e.g.,  R. 99, 135, 136, 143, 155, 163, 198, 200, 222, 237, 258.)

- 29 -

court permitted Schiff to call three of the five witnesses: John Turner, Noel Spaid, and Robert Schulz.  The court did limit the testimony each was permitted to offer, however, excluding irrelevant matters.  The district court completely excluded testimony from the other two proposed witnesses, Robert Eiler and Robert Wellesley.[21]

John Turner testified (2EOR 92-93) for defendant as a character witness regarding defendant's reputation for truthfulness.[22]  *See* Fed. R. Evid. 608(a). Defendant sought to offer additional evidence through Turner, claiming that Turner could offer testimony that "supports my belief that in doing what I'm doing I'm not breaking any laws because he simply verified that fact by leaving the IRS." (2EOR75.)  Defendant apparently met Turner at a tax defier seminar where Schiff was speaking.  (2EOR 75, 95.)  Defendant did not lay adequate foundation to establish that he relied on Turner in forming his purported beliefs.  While defendant claimed that he "relied on certain things [Turner] told me," defendant was unable to explain what those things were or to provide any time frame for his claim.  (2EOR 75, 95.)  Turner did not leave the IRS until 1997, years after defendant began the course of conduct charged in the indictment, which alleged that the crimes occurred

---

[21] We note that defendant does not address or even acknowledge (Br.33-41) his failure to provide any notice of these witnesses as required by the district court's orders.

[22] Turner was a former IRS employee turned tax defier.  (2EOR95.)

- 30 -

from July 1995 through March 2004.  (2EOR 95; R. 1 at 2.)  Defendant's proffer
made it clear that he was seeking Turner's testimony because he thought the
testimony "verified" and "support[ed] [his] beliefs," and not because Turner played
any role in the formation of Schiff's beliefs.  (2EOR 75.)  Indeed, defendant's
written proffer indicates that Turner became a tax defier as a result of reading
defendant's book.  (2EOR 95.)  The district court properly excluded the purposed
testimony from Turner because it was not relevant to the formation of defendant's
alleged beliefs.  Defendant's appellate counsel was objectively reasonable in
declining to argue that it was an abuse of discretion for the district court to exclude
the plainly irrelevant additional testimony.

Attorney Noel Spaid also testified as a character witness for Schiff.[23]  (See
2EOR 62-70; 19Tr. 5004-07.)  In addition, defendant sought to have Spaid testify
"regarding a fraud case that was brought against me."  (2EOR 64-65, 97.)
Defendant stated that the fraud case involved someone suing him "because they
followed my advice."  (2EOR 64.)  Defendant did not elaborate on how the lawsuit
was relevant to the instant criminal charges.  Defendant also sought to have Spaid
testify that "she agreed with me that the Notice of Levy is not a levy."  (2EOR 65.)
Defendant added that he "wanted to use her and four or five other lawyers simply to

---

[23] Spaid represented defendant in the related civil proceedings that resulted
in a permanent injunction against Schiff's operation of Freedom Books.  (2EOR
65-66.)

- 31 -

say that she believed that I believed my views sincerely." (*Id.*; see also 2EOR 67 (Schiff: "I object to the fact that she cannot offer evidence on whether or not she believes I hold my beliefs with sincerity.").) Defendant did not lay an adequate foundation to show that he relied on Spaid in forming any of his claimed beliefs. Indeed, there was no representation that defendant even knew Spaid before hiring her to represent him in the civil injunction case in 2003, which post-dates the conduct charged in the indictment. *See United States v. Schiff*, 269 F. Supp. 2d 1262 (D. Nev. 2003), *aff'd*, 379 F.3d 621 (9th Cir. 2004). The district court properly excluded Spaid's additional testimony of Spaid as not relevant; defendant's appellate counsel thus properly declined to raise the exclusion of Spaid's non-reputational testimony in Schiff's direct appeal.

Like Turner and Spaid, Robert Schulz testified as a character witness for Schiff.[24] (2EOR 89.) Defendant told the district court that he also wanted to use Schulz to help "explain[] why I might have my assets [in Belize]" because "Schulz was the one who was responsible for getting the decision . . . in which [the] Second Circuit said IRS summonses apply no force to taxpayers." (2EOR 73-74.) But defendant was unable to explain to the district court how the lack of enforcement of an IRS summons was related to his holding assets in Belize. (*Id.*) Moreover, because the Second Circuit case to which Schiff referred was issued in January

---

[24] Schulz was the head of a tax defier organization called "We the People Foundation." (2EOR 96.)

- 32 -

2005, after defendant was indicted, Schulz's testimony was irrelevant to the formation of defendant's purported beliefs. *See Schulz v. IRS*, 395 F.3d 463 (2d Cir.), *clarified on rehearing*, 413 F.3d 297 (2005). The district court properly excluded the testimony. Accordingly, defendant's appellate counsel was not objectively unreasonable in refusing to argue that it was an abuse of discretion for the district court to exclude Schulz's non-reputational testimony.

Defendant unsuccessfully sought to call Robert Eiler as a witness. (2EOR 104.) As noted above, the district court properly excluded Eiler because defendant failed to include him on a trial-witness list and failed to provide a written proffer of his proposed testimony. (See 2EOR 94-98.) Additionally, the proposed testimony would have been irrelevant. Schiff stated he wanted to call Eiler to testify that Eiler had followed his advice not to comply with an IRS summons, that nothing had happened to Eiler as a result, and that Eiler was able to continue paying defendant money that Eiler owed him from the sale of defendant's insurance agency. (2EOR 105.) Defendant admitted the testimony "had nothing to do with my beliefs" (2EOR 104), but nevertheless argued that Eiler's testimony would explain why defendant held assets in Belize – although he was unable to explain to the district court how that was so. (See 2EOR 105-06.) Eiler's proposed testimony was not relevant to the formation of defendant's alleged beliefs. *See United States v. Hardy*, 941 F.2d 893, 897 (9th Cir. 1991) (testimony that defendant knew of a "man who had failed to file his taxes for 12 years and suffered no consequences" was not

- 33 -

relevant to good faith belief). Defendant failed to lay an adequate foundation to show that he relied on Eiler in forming his purported beliefs – in fact, the reverse was apparently true: Eiler followed defendant's advice. The district court properly excluded the testimony and defendant's appellate counsel was objectively reasonable in refusing to argue that it was an abuse of discretion for the district court to exclude Eiler's plainly irrelevant testimony.

Finally, defendant sought to call Robert Wellesley as a witness. (2EOR 78-80.) Again, the district court properly excluded the testimony because defendant failed to include Wellesley on a trial-witness list and failed to provide a written proffer of his testimony. (See 2EOR 94-98.) Further, Wellesley's testimony was not relevant. Explaining to the district court why he wanted to call Wellesley as a witness, defendant stated that he sent Wellesley, who was apparently a parole officer and a student (2EOR 79-80), copies of transcripts of due process hearings held by IRS collections agents and that Wellesley concluded that "in every case the IRS didn't comply with the law." (2EOR 79.) Defendant claimed that Wellesley's testimony would demonstrate that the numerous appeals defendant's clients filed concerning IRS due process hearings were not frivolous because the IRS was not complying with the law in conducting the hearings. (*Id.*) Again, defendant sought post-hoc testimony from a like-minded individual in order to justify a course of action that defendant had already undertaken. The testimony was simply not relevant. Additionally, Wellesley's testimony was also properly excluded because

- 34 -

it improperly called for a legal conclusion from a layperson. *See Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058-59 (9th Cir. 2008). Given the multiple bases upon which the district court properly excluded Wellesley's proposed testimony, defendant's appellate counsel reasonably refused to raise the matter in defendant's direct appeal.

Essentially, defendant sought testimony from other tax defiers to bolster his claim that he had a good faith belief that he was complying with the law; he wanted a parade of like-minded individuals testifying they too similarly "misapprehend" the law. The Fourth Circuit rejected a similar tactic in *United States v. Delfino*, 510 F.3d 468 (4th Cir. 2007). There, the defendants proposed to have a succession of participants in the same sham trust program that the defendants had used testify that the other trust participants believed the trusts were legitimate. *Id.* at 470. The district court refused to permit the testimony, reasoning "(1) that good-faith reliance is a purely subjective defense and that the testimony of other participants in [the] scheme was irrelevant to the Delfinos' own subjective good-faith beliefs and (2) that even if these witnesses were 'marginally relevant' to the Delfinos' defense, their testimony would confuse the jury and constitute a waste of time." *Id.* The court of appeals affirmed, determining that the district court acted well within its discretion in excluding the proffered testimony as irrelevant. *Id.* at 470-71.

Schiff's proposed witnesses were similarly properly excluded. Indeed, the excluded testimony from these five individuals was even more objectionable than

- 35 -

the proposed testimony that was excluded in *Delfino*.  Like the excluded testimony

there, the testimony Schiff sought to offer through Turner, Spaid, Schulz, Eiler, and

Wellesley was irrelevant: a good faith belief is subjective and Schiff could not tie

those five individual's experiences and beliefs to his purported beliefs at the time he

committed the offenses.  And even more tenuous than in *Delfino*, Schiff proposed to

have other tax defiers with whom he had little involvement or connection opine to

the jury that Schiff's purported good faith beliefs were sincere and widely held.

The district court properly refused to permit such prejudicial, irrelevant, confusing,

and time consuming testimony.  *See* Fed. R. Evid. 402, 403.  Furthermore, the

proposed testimony would have improperly invited the jury to acquit Schiff for

having engaged in conduct that these five witnesses would have told the jury is

common.  *See Old Chief v. United States*, 519 U.S. 172, 180 (1997) ("[t]he term

'unfair prejudice'. . . speaks to the capacity of some concededly relevant evidence

to lure the factfinder into declaring guilt [or innocence] on a ground different from

proof specific to the offense charged.").

　　　　Finally, even if defendant's appellate counsel acted unreasonably in refusing

to raise the exclusion of this testimony in defendant's direct appeal, defendant

cannot demonstrate prejudice.  Defendant offered his own lengthy testimony

regarding his purported beliefs over three trial days.  (See 17Tr. 4511-4585; 18Tr.

4640-4914; 19Tr. 4963-4994.)  During his testimony, defendant testified at length

regarding his alleged beliefs.  And it is precisely a defendant's own testimony

- 36 -

regarding his beliefs that is the best evidence of whether he possessed a subjective good faith belief that his actions were proper. *See United States v. Mann*, 884 F.2d 532, 538 (10th Cir. 1989) (defendant's direct testimony regarding his alleged good faith belief regarding tax laws was most probative of those beliefs); *United States v. Hairston*, 819 F.2d 971, 973 (10th Cir. 1987) (direct testimony of defendant is most probative evidence of his state of mind). Moreover, the district court allowed at least three witnesses to offer testimony that defendant was sincere in and had support for his beliefs.[25] Specifically, Glenn Murphy testified: "I have not found one thing in [defendant's] book or in any of the publications or in any tapes that I've got from [defendant] that can be disputed." (16Tr. 4286.) Calvin Border testified that he had "no reason whatsoever" to believe that defendant did not hold his beliefs truthfully and with sincerity. (17Tr. 4444.) And defendant adduced testimony from government witness Antoinette Mitchell that she read and believed defendant's book, and that after doing research, she came to the conclusion that the propositions put forth in the book were correct. (3Tr. 503.) At best, the excluded testimony that Schiff proposed to adduce from the five witnesses was cumulative; its exclusion was therefore harmless. *United States v. Lindsey,* 634 F.3d 541, 553 (9th Cir. 2011). Because defendant cannot show prejudice, his argument necessarily fails. *Schaflander*, 743 F.2d at 717.

---

[25] A total of twelve witnesses, including Schiff himself, testified in Schiff's defense.

- 37 -

3.  Legal Materials

Defendant next mistakenly asserts (Br. 42-46) that his appellate counsel was ineffective by declining to argue that the district court abused its discretion in excluding from evidence certain legal materials on which defendant claims to have relied in forming his purported beliefs.[26]

Legal materials offered to show the jury the law may be excluded as likely to mislead and confuse the jury.  *See* Fed. R. Evid. 403.  In *Cooley v. United States*, 501 F.2d 1249, 1253-54 (9th Cir. 1974), this Court upheld the exclusion of legal materials offered as evidence of a defendant's good faith in a criminal tax case, stating that "it would be most confusing to a jury to have legal material introduced as evidence and then argued as to what the law is or ought to be."  Similarly, in *United States v. Malquist*, 791 F.2d 1399 (9th Cir. 1986), a failure-to-file case, the Court sustained the trial court's exclusion of legal material on which the defendant claimed to have relied in forming his asserted good faith beliefs.  Citing *Cooley*, this Court held that because a trial court is not obliged to admit legal material as evidence and because the trial court had allowed the defendant to testify that he had relied on the excluded material when forming his claimed beliefs, the trial court did not abuse its discretion in refusing to admit the legal documents themselves.  *Malquist,* 791 F.2d at 1402; *see also United States v. Bergman*, 813 F.2d 1027,

---

[26] Schiff failed to file an exhibit list as required by the district court's pretrial order.  (See R. 192; see, e.g., R. 259 (codefendant Neun's exhibit list).)  The district court has "broad discretion to exclude an exhibit not identified [as required] in the pretrial order."  *Swinton v. Potomac Corp.*, 270 F.3d 794, 809 (9th Cir. 2001).

- 38 -

1029-30 (9th Cir. 1987); *United States v. Gustafson*, 528 F.3d 587, 592 (8th Cir. 2008) (district court did not err in excluding legal materials where defendants had opportunity to explain their views on tax law); *United States v. Ellett*, 527 F.3d 38, 39 n.2 (2d Cir. 2008) (upholding exclusion of legal materials that defendant claimed to have relied upon in forming a view that tax laws were invalid); *United States v. Willie*, 941 F.2d 1384, 1394-95 (10th Cir. 1991) (legal materials properly excluded because they "would have had a high potential to confuse the jury and conflict with the court's responsibility to instruct on the law"); *United States v. Bernhardt*, 642 F.2d 251, 253 (8th Cir. 1981) (trial court was warranted in excluding case law on which defendant claimed to have relied on the ground that it would tend to confuse the jury); *United States v. Bonneau*, 970 F.2d 929, 931-32 (1st Cir. 1992) (exclusion of legal material was proper).  Here, the district court allowed Schiff to discuss the legal materials on which he claimed to have relied, which Schiff did at length during his testimony (17Tr. 4511-4585; 18Tr. 4640-4914; 19Tr. 4963-4994). *Accord Malquist*, 791 F.2d at 1402.  Schiff was able to present his reasoning and understanding of the excluded legal documents to the jury, and his testimony was the best evidence of his claimed subjective beliefs.  *See Mann*, 884 F.2d at 538 (defendant's testimony regarding his alleged good faith belief regarding tax laws was more probative than publications representing the source or articulation of those beliefs); *Hairston*, 819 F.2d at 973 (direct testimony of defendant is most probative evidence of his state of mind).

- 39 -

Defendant nevertheless insists (Br. 44-46) that his appellate counsel ineffectively failed to argue that the district court abused its discretion in refusing to admit two Supreme Court cases into evidence as exhibits. On the third day of trial, defendant sought to introduce copies of *Pollack v. Farmer's Loan & Trust Co.*, 158 U.S. 601 (1895), and *Merchant's Loan & Trust Co. v. Smietanka*, 255 U.S. 509 (1921). (2EOR 116-17.) The district court properly excluded the cases at the time because Schiff was attempting to offer them based on statements he made while acting in his capacity as his own attorney*,* and not on the basis of the testimony of any witness. (*Id.*)

Later, during his own testimony, defendant stated that he relied on *Pollack* and *Merchant's Loan* in forming his purported belief that there was no law requiring the payment of individual income tax. (2EOR 86-89, 91.) According to defendant, *Merchant's Loan* stood for the proposition that the term "income" was limited to the definition given it in the Corporate Excise Tax Act of 1909, and that therefore only corporate profits were income. (2EOR 86.) Defendant stated that *Pollack* held that tax on the income from real and personal income was a "tax on the property itself and, therefore, had to be apportioned." (2EOR 88.) Defendant stated that from these two cases, he concluded that only corporate profits are subject to income tax. (*Id.*) He further stated that wages are not subject to income tax because there is no profit from wages, since a worker sells the labor exactly for what it is worth. (*Id.*) The district court permitted defendant to fully testify about the two cases and how what each opinion said had influenced his purported beliefs. The court also allowed Schiff to read a quote from *Merchants' Loan*. (2EOR 86.)

- 40 -

The court did not restrict defendant's testimony regarding the Supreme Court cases and the government did not attempt to specifically refute his statement regarding his understanding of the meaning of these cases.

Defendant did not seek to introduce copies of the cases into evidence during his testimony.  (2EOR 86-89.)  Only after the close of all evidence, did defendant again seek to introduce the cases.  (2EOR 71-72 (day 19 of trial).)  But the district court properly denied defendant's untimely motion.  In addition, admitting the cases into evidence was likely to mislead and confuse the jury: copies of the cases were properly excluded for this reason.  *See Cooley*, 501 F.2d at 1253-54; *Malquist*, 791 F.2d at 1402; *Bergman*, 813 F.2d at 1029-30.  Indeed, the potential for confusion was exacerbated by Schiff's repeated refusals to obey the district court's order to limit his testimony to his beliefs about the law, and not to argue what the law was.[27]

---

[27] From early in the trial, Schiff repeatedly attempted to argue his views of tax law before the jury while examining witnesses.  (See, e.g., 3Tr. 643-44, 717-18; 4Tr. 831, 853; 5Tr. 1078-80, 1111, 1215.)  He repeatedly asserted that there was no law requiring the payment of income taxes, claimed that the IRS violated the law, and made other misstatements of law.  (*See, e.g.,* 3Tr. 643-44, 717-18; 5Tr. 1109, 1185, 1219; 7Tr. 1706; 8Tr. 2026, 2161, 2172-74, 2180; 18Tr. 4919-20.)  For example, while phrasing his statements as questions, Schiff said such things as "none of the sections . . . said anybody's required to file" and "there's no provision in the law that allows the IRS to put on liens."  (3Tr. 644, 717.)  Defendant also attempted to have witnesses read excerpts from his book setting forth his views of the law.  (See, e.g., 2Tr. 436; 5Tr. 1111; 8Tr. 2025, 2161.)  For example, Schiff had a witness read a section of Schiff's book that stated, "There is no question that it is all correct.  Paying and filing income tax are, by law, voluntary."  (5Tr. 1111.)  The district court repeatedly cautioned defendant not to testify or misstate the law while examining witnesses.  (See, e.g., 4Tr. 831; 5Tr. 1186, 1216, 1218; 7Tr. 1706; 8Tr. 2162, 2172-74, 2176).  But the admonitions did not work, and the district court eventually imposed contempt sanctions against Schiff.  (9Tr. 2256-62; 10 Tr. 2620-24; R. 497-512.)

- 41 -

(See, e.g., 2EOR 57-61, 86-89; R. 497-512.)  Defendant's appellate counsel reasonably declined to argue that the district court abused its discretion – a high burden to meet – in refusing to admit into evidence copies of the two Supreme Court opinions.

Defendant next argues (Br. 43-44) that his appellate counsel was ineffective by refusing to argue that the district court abused its discretion in excluding an article from the *Journal of Taxation*.  *See* Elliot Silverman, *Is Affirmative Misconduct Necessary for Tax Evasion?*, 66 *Journal of Taxation* 112 (February 1987).  The article discussed the Second Circuit's opinion upholding defendant's prior tax evasion conviction.[28]  *Id.*  The article concerned the elements of tax evasion, in violation of 26 U.S.C. § 7201, and what type of conduct constitutes an affirmative act of evasion – primarily focusing on whether the instructions approved by the Second Circuit might allow a jury to convict without the commission of an affirmative act.  *Id.*  The article had no relation to defendant's alleged belief that there was no law requiring the payment of individual income tax: it concerned the parameters of the crime of tax evasion, not the duty to pay individual income tax. The article was irrelevant to the formation of defendant's purported good faith belief that he had no duty to pay individual income taxes and properly excluded on

---

[28] *United States v. Schiff*, 801 F.2d 108, 113-14 (2d Cir. 1986).

- 42 -

that basis.  (See 18Tr. 4916-25.)  In addition, the article was properly excluded because it was likely to mislead and confuse the jury.  *See Cooley*, 501 F.2d at 1253-54; *Malquist*, 791 F.2d at 1402.  The district court properly denied defendant's attempt to enter the article into evidence.  Defendant's appellate counsel reasonably elected not to argue that the district court abused its discretion in refusing to admit this irrelevant and confusing material.

Defendant also erroneously asserts (Br. 42-43) that his appellate counsel was ineffective when counsel did not argue that the district court abused its discretion when the court refused to permit defendant to read to the jury portions of a statute dealing with the delegation of authority to enforce the Internal Revenue Code.  *See* 26 U.S.C. § 7701(12); 44 U.S.C. § 1505.  During his testimony, defendant stated that the IRS had not been delegated authority to enforce the Internal Revenue Code. (2EOR 57-61.)  The government objected when it appeared that Schiff was reading from an undisclosed document.  (2EOR 57.)  When the court asked what document he was reading from, Schiff was evasive and refused to answer directly.  (2EOR 58-59.)  The court stated for the record that the document appeared to be "cobbled together," something defendant "cut and pasted."  (2EOR 59.)  The court told Schiff: "if you want to read from something, it must be marked so that the Government knows what you are reading from."  (2EOR 59, 60.)  Following the

- 43 -

court's ruling, defendant made no further effort to continue reading from the document or to identify it.  (*Id.*)

Contrary to defendant's assertion (Br. 42), the district court did not prohibit defendant from reading the statute, but only required defendant to identify what he was reading, which he declined to do.  Certainly it was not ineffective for appellate counsel to decline to raise this unpreserved non-error.  At any rate, testimony such as that which defendant appeared to be giving, which consists of bits of statutes or other law interspersed with defendant's annotations and commentary, would be confusing and misleading, and may properly be restricted by the court.  *See Cooley*, 501 F.2d at 1253-54; *Malquist*, 791 F.2d at 1402.  Defendant's appellate counsel was not ineffective.

Defendant cites (Br. 46) *United States v. Powell*, 955 F.2d 1206, 1214 (9th Cir. 1992), to support his argument that the court below was required to admit these various legal materials.  But *Powell* did not change the Rule 403 analysis this Court employed in *Cooley*, *Malquist*, and *Bergman*.  *Powell* acknowledged that "a district court may exclude evidence of what the law is or should be," but opined that the court "ordinarily cannot exclude evidence relevant to the jury's determination of what a defendant thought the law was in § 7203 cases because willfulness is an element of the offense."  955 F.2d at 1214.  This statement was only dictum, however: the panel prefaced its discussion of the exclusion of legal materials with a statement that "[b]ecause we reverse on other grounds, we need not decide whether to reverse on this ground as well.  We nevertheless discuss the issue in order to

- 44 -

provide guidance to the district court on remand and in similar cases." 955 F.2d at

1213. This Court has not adopted the *Powell* dictum in any published opinion. The

law as explained in *Cooley*, *Malquist*, and *Bergman* remains controlling and clearly

supports the district court's decision to exclude various legal documents under Rule

403.[29]

In any event, *Powell* cannot be read as requiring district courts to admit any

and all legal materials a defendant claims to have relied upon regardless of their

probative value. *Powell* stated that legal materials "the defendant claims to have

actually relied [upon] are admissible to disprove willfulness if the defendant lays a

proper foundation which demonstrates such reliance." *Powell*, 955 F.2d at 1214

(citing *United States v. Harris*, 942 F.2d 1125, 1132 n.6 (7th Cir. 1991); *United

States v. Willie*, 941 F.2d at 1391-99). This language indicates that there must be

something more than a mere claim of reliance for the legal materials to be admitted.

In *Willie*, cited by the *Powell* panel, the court held that a defendant offering legal

materials "must persuasively show the trial judge that the evidence is being offered

for a permissible purpose by making a proffer of great specificity regarding the type

---

[29] *Cooley*, *Malquist*, and *Bergman* were not overruled or otherwise
undermined by *Cheek*. In *Cheek*, the Supreme Court held that an instruction
requiring a good-faith misunderstanding of the law to be objectively reasonable in
order to negate willfulness was incorrect. 498 U.S. at 201. Admissibility of
evidence was not at issue in the case, and the Court did not hold that a trial court
must admit any and all evidence related to the basis of a defendant's purported
beliefs about the tax laws. *See Willie*, 941 F.2d at 1394-95; *United States v.
Fingado*, 934 F.2d 1163, 1165 n.1 (10th Cir. 1991) (In *Cheek* "[t]he Court did not
require the admission of these types of legal documents or testimony regarding
their contents but rather left the determination of admissibility within the trial
court's discretion").

- 45 -

of belief he seeks to prove.  A mere statement that the evidence is submitted to show sincerity of belief is not enough." *Willie*, 941 F.2d at 1392-93.  Here, defendant provided only a vague explanation as to how and when the excluded materials allegedly led to the formation of his purported good faith beliefs.  (16Tr. 63-69, 107-11; ER 45.)  Even under the *Powell* dictum, the documentary evidence at issue was properly excluded.  Defendant's appellate counsel reasonably declined to argue that the district court abused its discretion in refusing to admit these legal materials into evidence; counsel was effective.

Finally, even if the district court had erred in excluding the legal materials, defendant is not entitled to relief: he has failed to demonstrate prejudice from appellate counsel's decision not to challenge the exclusion of the legal materials. Contrary to defendant's erroneous assertion (Br. 49), the district court's rulings did not "exclude[] nearly all evidence" related to his good faith defense.  In fact, defendant had ample opportunity to submit the substance of his good-faith theory to the jury.  Over the three days of his testimony, Schiff was free to talk about materials on which he claimed to have relied and the extent of his research.  (17Tr. 4511-4585; 18Tr. 4640-4914; 19Tr. 4963-4994.)  Defendant discussed letters he sent to the IRS and Congress regarding his views and was allowed to introduce as evidence a letter he received in return from Congressman Dan Burton.  (See, e.g., 17Tr. 4581-584; D.Ex. 2115.)  Defendant was allowed to introduce as exhibits parts of several versions of the Internal Revenue Code and to discuss his views of how those statutes limited the definition of taxable income to corporate profits.  (See

- 46 -

18Tr. 4884-90; D.Ex. 2117.)  Defendant was permitted to testify about his

understanding of the *Journal of Taxation* article and how it impacted his purported

beliefs.  (18Tr. 4916-24; 19Tr. 4955.)  Defendant was also permitted to testify about

his understanding of the Supreme Court cases and the effect they had on his

purported beliefs.  (17Tr. 4539-43; 17Tr. 4558-64; 17Tr. 4589-91; 18Tr. 4780-82;

18Tr. 4897-4900; 18Tr. 4903-09.)  The exclusion of additional legal materials did

not prevent defendant from demonstrating for the jury the extent of his claimed

research and did not hinder defendant in presenting his defense.  Irrespective of

whether it was ineffective for appellate counsel to decline to raise the issue, since

defendant was not prevented from presenting the substance of his defense to the

jury, any error in excluding this evidence at trial was harmless.  *See Willie*, 941 F.2d

at 1398-99.  Defendant cannot demonstrate that the admission of these legal

materials would have overcome the "overwhelming" evidence that he "intended to

deceive the government," *Cohen*, 262 Fed. Appx. at 16, and changed the outcome

of the proceedings below.

    4.  Book and Video

    Lastly, defendant erroneously asserts (Br. 47-49) that his appellate counsel

ineffectively refused to argue that the district court abused its discretion in

excluding from evidence a book defendant wrote and a video of defendant speaking

at a seminar.

    A district court has broad discretion in its decisions to admit or exclude

evidence.  *United States v. Ellis*, 147 F.3d 1131, 1135 (9th Cir. 1998).  A

- 47 -

"[defendant's] attempt to introduce statements of her belief (that she was not violating the law) to prove the fact believed (that she was acting in good-faith) is improper." *United States v. Sayakhom*, 186 F.3d 928, 937 (9th Cir.), *opinion amended on other grounds*, 197 F.3d 959 (1999); *United States v. Emmert,* 829 F.2d 805, 810 (9th Cir. 1987); *see also Tome v. United States*, 513 U.S. 150, 156-60 (1995) (prior consistent statements are only admissible to rebut a claim of recent fabrication). A court may exclude testimony or evidence which contains misstatements of the law. *Cohen,* 262 Fed. Appx at 17; *United States v. Willis*, 277 F.3d 1026, 1033 (8th Cir. 2002) (tax defier materials had "high potential to confuse the jury and conflict with the court's responsibility to instruct on the law"). Furthermore, under Rule 403, relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading of the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403; *see also Bishop*, 291 F.3d at 1112; *Delfino*, 510 F.3d at 470-72 . In addition, testimony offered in a narrative form may be properly excluded. *See United States v. Carter*, 410 F.3d 942, 951 (7th Cir. 2005) (district court may restrict or exclude narrative-form evidence). The district court's exclusion of evidence is reviewed for abuse of discretion. *Ellis*, 147 F.3d at 1135.

Defendant asserts (Br. 42-43) that his appellate counsel was ineffective by choosing not to argue that the district court abused its discretion in refusing to admit a copy of defendant's book, *The Great Income Tax Hoax*, as a trial exhibit.

- 48 -

During the third day of the trial, when government witness Antoinette Mitchell testified that she had read the book, defendant sought to admit the book into evidence.  (2EOR 121-22.)  The trial court properly refused to admit the book as evidence at that time because Mitchell was not a proper person through whom to offer the book: her beliefs regarding tax law were not relevant.  *See Bishop,* 291 F.3d at 1112*.*  During his own testimony, defendant discussed the books that he wrote, but did not seek to offer *The Great Income Tax Hoax* into evidence.  (See 17Tr. 4510-14.)  At any rate, *The Great Income Tax Hoax* was properly excludable for numerous reasons.  First, under *Sayakhom*, the book constituted an improper attempt to introduce out-of-court statements regarding defendant's purported belief that he was not violating the law in order to prove the fact that he believed he was acting in good-faith.  186 F.3d at 937.  The book also contained misstatements of the law and was properly excludable for that reason.  *Cohen,* 262 Fed. Appx at 17.  In addition, the book was likely to contain large amounts of other types of inadmissible evidence, such as hearsay (for example, in the form of testimonials and anecdotes) and irrelevant material.  Defendant argues (Br. 48) that the jury would have viewed the fact that he "authored a book on the subject as evidence tending to show subjective genuineness of his asserted belief."  But the jury, through defendant's own testimony, was fully aware that defendant had written several books on the subject, a fact that was not disputed by the government.  (See, e.g., 2EOR 121-22; 17Tr. 4510-14.)  Nothing additional could be gained by admission of the book itself.  *See, e.g., Masson v. New Yorker Magazine, Inc.*, 85 F.3d 1394,

- 49 -

1400 (9th Cir. 1996) (book was properly excluded from evidence because jury cannot be expected to read a whole book, and excerpts would be time consuming, misleading, and confusing).  The district court properly refused admission of the book as a trial exhibit and defendant's appellate counsel reasonably refused to raise the matter in defendant's direct appeal.

Finally, defendant asserts (Br. 42-43) that his appellate counsel was ineffective by not arguing that the district court abused its discretion in refusing to show the jury a three-and-one-half hour video of defendant speaking at a seminar. During the seventeenth day of trial, defendant asked to be allowed to play the video to the jury.  (2EOR 83.)  Defendant claimed that the video would show that he did not "promote tax evasion" as part of the seminar.  (*Id.*)  Defendant also stated that the video supported his good faith defense and "self-reliance."  (2EOR 99.)  The district court excluded the video.  Defendant incorrectly asserts that the video was relevant because, he claims, he did not promote tax evasion in the video.  (2EOR 83.)  But defendant cannot establish innocence for a charged crime by showing that he did not commit similar crimes on other occasions.  *Herzog v. United States*, 226 F.2d 561, 565 (9th Cir. 1955); *United States v. Heard*, 709 F.3d 413, 434 (5th Cir. 2013) (district court properly excluded evidence that accountant-defendant paid over payroll taxes for other clients).  As he was doing with *The Great Income Tax Hoax*, Schiff was seeking to introduce the video in an attempt to offer out-of-court statements regarding his purported belief that he was not violating the law in order to prove that he believed that he was acting in good-faith.  *Sayakhom*, 186 F.3d at

- 50 -

937.  The video also contained misstatements of the law, *Cohen,* 262 Fed. Appx. at

17, and was likely to contain large amounts of other types of inadmissible evidence,

such as hearsay and irrelevant material.  The district court also properly excluded

the video because it would have allowed defendant to improperly testify in a

prepared, narrative form.  *See Carter*, 410 F.3d at 951.  Given the multiple bases

upon which the district court properly excluded the video, defendant's appellate

counsel reasonably refused to raise the matter in defendant's direct appeal.

Even if the district court erred in excluding the book and the video tape,

reversal is not warranted; defendant cannot demonstrate prejudice.  Defendant had

ample opportunity to submit the substance of his good-faith theory to the jury.  For

nearly three days, Schiff testified about his beliefs and the extent of his research.

(17Tr. 4511-4585; 18Tr. 4640-4914; 19Tr. 4963-4994.)  And it is precisely a

defendant's own testimony regarding his beliefs that is the best evidence from

which the jury can determine whether he possessed a subjective good faith belief

that his actions were proper.  *See Mann*, 884 F.2d at 538; *Hairston*, 819 F.2d at 973.

The exclusion of the book and the video tape did not prevent defendant from

testifying extensively about his purported beliefs, and did not hinder defendant in

presenting his defense.  Indeed, defendant does not argue that the book or video

contained any additional information that was not also contained in his testimony.

*Lindsey,* 634 F.3d at 553 (exclusion of cumulative testimony and evidence is

harmless); *see* Fed. R. Evid. 403 (allowing the exclusion of "needless presentation

of cumulative evidence").  As with the exclusion of the legal materials upon which

- 51 -

Schiff claimed to have relied, since defendant was not prevented from presenting the substance of his defense by the court's exclusion of the book and the video, any error was harmless. *See Willie*, 941 F.2d at 1398-99. Defendant has not demonstrated that the admission of the book and video would have overcome the "overwhelming" evidence that he "intended to deceive the government," *Cohen*, 262 Fed. Appx. at 16, and changed the outcome of the proceedings below. Even if appellate counsel had raised the exclusion of this evidence on direct appeal, defendant's convictions would have been affirmed.

- 52 -

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be affirmed.

Respectfully submitted,

s/ Mark S. Determan

KATHRYN KENEALLY
  *Assistant Attorney General*
FRANK P. CIHLAR                    (202) 514-5396
  *Chief, Criminal Appeals &*
    *Tax Enforcement Policy Section*
GREGORY VICTOR DAVIS  (202) 514-5396
MARK S. DETERMAN          (202) 514-9245
  *Attorneys*
    *Tax Division*
    *Department of Justice*
    *Post Office Box 502*
    *Washington, D.C. 20044*

*Of Counsel:*

DANIEL G. BOGDEN, ESQ.
  *United States Attorney*

APRIL 2013

- 53 -

## STATEMENT OF PRIOR OR RELATED CASES

The undersigned counsel respectfully informs the Court that the present appeal is related to the following prior case:

*United States v. Lawrence Cohen, Irwin A. Schiff, and Cynthia Neun*, 510 F.3d 1114 *and* 262 Fed. Appx. 14  (9th Cir. Dec. 26, 2007)

(Nos. 06-10145, 06-10199, 06-10201) (direct appeal in this case).

/s/ Mark S. Determan
Mark S. Determan
Attorney

Dated: April 19, 2013

- 54 -

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME
LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE
REQUIREMENTS

1.  This brief complies with the type-volume limitation of Fed. R. App. P.
32(a)(7)(B) because:

[X] this brief contains 13,979 words, excluding the parts of the brief exempted by
Fed. R. App. P. 32(a)(7)(B)(iii), or

[ ] this brief uses a monospaced typeface and contains [state the number of] lines
of text, excluding the parts of the brief exempted by Fed. R. App. P.
32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5)
and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[X] this brief has been prepared in a proportionally spaced typeface using
WordPerfect 12 in 14-pt. Times New Roman type style, or

[ ] this brief has been prepared in a monospaced typeface using [state name and
version of word processing program] with [state number of characters per inch
and name of type style].

(s)    s/ Mark S. Determan
Attorney for the Appellee, United States

Dated: April 19, 2013

- 55 -

CERTIFICATE OF SERVICE

When All Case Participants Are Registered
For The Appellate CM/ECF System

I hereby certify that on April 19, 2013, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

(s)  s/ Mark S. Determan
Attorney

- 56 -

CERTIFICATE FOR BRIEF IN PAPER FORMAT

No. 12-17712

I, Mark S. Determan, certify that this brief is identical to the version submitted electronically on April 19, 2013.

_____
MARK S. DETERMAN
Attorney for Appellee
United States of America

Dated: April __, 2013